**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-01817-RM-KLM

CATHERINE BURNS;
SHEILA SCHROEDER;
MARK THRUN;
GEOFFREY BATEMAN;
RACHEL CATT;
CASSIE RUBALD;
BREANNA ALEXANDER;
STACY PARRISH;
ANGELA CRANMORE;
JULIANNE DELOY;
KAREN COLLIER; and
DENISE LORD;

      Plaintiffs,

v.

JOHN W. HICKENLOOPER, JR., in his official capacity as Governor of Colorado;
JOHN SUTHERS, in his official capacity as Attorney General of Colorado;
PAM ANDERSON, in her official capacity as Clerk and Recorder for Jefferson County;
DEBRA JOHNSON, in her official capacity as Clerk and Recorder for the City and County of
Denver;

      Defendants.

---

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES**

---

     Plaintiffs, by and through their attorneys, Mari Newman, David A. Lane, Darren M.
Jankord, and Danielle C. Jefferis of KILLMER, LANE & NEWMAN, LLP, hereby move this Court
for an ORDER for Attorneys' Fees And Expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. §
1920, FED.R.CIV.P. 54(d), and other supporting law.  As grounds for this Motion, Plaintiffs state
as follows:

## INTRODUCTION

Plaintiffs sued Defendants under the Fourteenth Amendment for violating their "fundamental right to marry, establish a family, raise children, and enjoy the full protection of a state's marital laws." *Kitchen v. Herbert*, No. 13-4178, 2014 U.S. App. LEXIS 11935, at *3-4 (10th Cir. June 25, 2014).  After highly disputed litigation, which included an appeal to the Tenth Circuit, Defendants have been permanently enjoined from enforcing Colorado's unconstitutional same-sex marriage bans (COLO. CONST. art. II, § 31; C.R.S. § 14-2-104(1)(b); C.R.S. § 14-2-104(2)).  Because of these Plaintiffs and the efforts of their lawyers, marriage equality is finally a reality in Colorado.  Accordingly, as the prevailing parties, Plaintiffs are entitled to an award of reasonable costs and attorneys' fees in amounts set out below.

## ARGUMENT

"In any fee request under §1988(b), a claimant must prove two elements: (1) that the claimant was the 'prevailing party' in the proceeding; and (2) that the claimant's fee request is 'reasonable.'"  *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998).  Because Plaintiffs were the prevailing parties in this litigation, and because their fee request is reasonable, they are entitled to an award of attorneys' fees.  Plaintiffs are also entitled the reasonable costs incurred in this litigation.

### I.      Plaintiffs were the "Prevailing Parties" in this Proceeding

The first element that Plaintiffs must prove in order to establish their entitlement to a fee award is that they were the "'prevailing party' in the proceeding."  *Robinson*, 160 F.3d at 1280.  "Under [the Supreme Court's] generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in

litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal quotation marks omitted). "[A]t a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Furthermore, "the prevailing party inquiry does not turn on the magnitude of the relief obtained, and . . . the degree of the plaintiff's success does not affect eligibility for a fee award." *Phelps v. Hamilton*, 120 F.3d 1126, 1130 (10th Cir. 1997).

Obtaining a permanent injunction that requires "the defendant officials to change their behavior in a way that directly benefit[s] the plaintiff" renders the plaintiff a prevailing party for purposes of Section 1988. *Lefemine v. Wideman*, 133 S. Ct. 9, 10 (2012) (per curiam). Likewise, a plaintiff who obtains an entry of judgment, like the one entered in this case, is a prevailing party. *Farrar*, 506 U.S. at 111 (noting that, to be considered a prevailing party, "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement" (internal citations omitted)).

There is no doubt that Plaintiffs are the prevailing parties in this case. Plaintiffs' motion for a preliminary injunction was granted on July 23, 2014 [Doc. 45] and a permanent injunction entered on October 17, 2014. [Doc. 63]. In entering the permanent injunction, this Court ruled:

> The Court finds and concludes: (1) Colorado's Challenged Laws impermissibly violate Plaintiffs' fundamental right to marry under the Due Process and Equal Protection Clauses of the United States Constitution; (2) Plaintiffs suffered – and will continue to suffer – irreparable harm in the form of violations of their constitutional right unless the injunction is issued; (3) the balance of equities tip strongly in favor of Plaintiffs as their actual and threatened injury outweigh any harm that the injunction may cause Defendants; and (4) the public interest will not

be adversely affected by the injunction because the preservation of constitutional rights serves everyone's interest.

[Doc. 63 p. 3]. Plaintiffs are thus indisputably prevailing parties for purposes of Section 1983, and, "the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989) (internal quotation marks omitted).  Because no such special circumstances exist in this case, Plaintiffs are entitled to a reasonable fee award.

## II.      Plaintiffs' Fee Request is Reasonable

After establishing that they prevailed in the proceedings, Plaintiff must establish that their "fee request is 'reasonable.'"  *Robinson*, 160 F.3d at 1280.  The number of hours billed and the hourly rates provided are reasonable, establishing a reasonable lodestar value for the fee award.

### A.  Plaintiffs' Counsel is Entitled to a Fully Compensatory Fee

"'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Farrar*, 506 U.S. at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  Plaintiffs obtained judgment against Defendant on all of their legal claims in this case, as Colorado's same-sex marriage bans were declared unconstitutional and Defendants are now permanently enjoined from enforcing them.  Because Plaintiffs unquestionably succeeded on their claims, Plaintiffs' counsel is entitled to a full fee award.

It is also very important for this Court to carefully consider the nature of this litigation. In many § 1983 cases, damages are awarded against a wrongdoer, thereby giving plaintiff's counsel a fund of damages to draw upon as well as a court-ordered fee shift pursuant to § 1988. In this case, however, there was never any possibility of damages being awarded, thus making

the only prospect of an attorney's fee being the statutory fee shift.  This made the litigation much riskier for Plaintiffs' counsel.

**B.  The Lodestar Amount**

"A court will generally determine what fee is reasonable by first calculating the lodestar – the total number of hours reasonably expended multiplied by a reasonable hourly rate – and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome."  *Phelps*, 120 F.3d at 1131 (10th Cir. 1997).

**1.  Summary of Plaintiffs' Counsel's Hours and Rates**

The following is a summary of the hourly rates hours billed by each attorney and staff member who worked on this case.  The reasonableness of these numbers is explained in the Section 2, below.

| Employee | Hourly Rate | Hours Billed | Total Fee |
|---|---|---|---|
| Mari Newman | $450 | 169.3 | $76,185 |
| David A. Lane | $500 | 34.9 | $17,450 |
| Darold W. Killmer | $500 | 6.4 | $3,200 |
| Darren Jankord | $300 | 63 | $18,835 |
| Danielle Jefferis | $275 | 53.45 | $14,698.75 |
| Paralegals | $150 | 24.4 | $3660 |
| **TOTAL** | | | $134,028.75[1] |

These amounts are supported by the Affidavit of Mari Newman (**Exhibit 1**) and time sheet, attached hereto as **Exhibit 2** respectively, including specific descriptions and time spent on tasks performed.

---

[1] This is the total amount billed after an exercise of billing discretion of over $16,000, as set forth in the attached time sheet.

### 2.  Plaintiffs' Counsel's Hours are Reasonable

"The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees."  *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983).  "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by Section 1988."  *Robinson*, 160 F.3d at 1281.  The Tenth Circuit has compiled a list of factors to be considered when evaluating the reasonableness of a prevailing party's attorney's hours submitted in a fee petition: "(1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side, and (6) potential duplication of services by multiple lawyers."  *Id.* (emphasis added) (internal quotation marks omitted); *accord Lamm*, 713 F.2d at 554 (10th Cir. 1983).

### a.  Plaintiffs' Counsel Appropriately Exercised Billing Judgment

In evaluating a fee request, "[t]he district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation." *Lamm*, 713 F.2d at 553.  To that end:

> Compiling raw totals of hours spent . . . does not complete the inquiry.  It does not follow that the amount of time actually expended is the amount of time reasonably expended.  In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority.

*Id.* (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).  In exercising billing judgment, "[t]he prevailing party must make a 'good-faith effort to exclude from a fee request

hours that are excessive, redundant, and otherwise unnecessary.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434).

In this case, Plaintiffs' counsel has diligently exercised billing judgment. For example, undersigned counsel has written off a significant amount of time for work necessarily done in this case as reflected in the Timesheets attached hereto as **Exhibit 2**. Likewise, duplicative time entries have been removed, and work determined to be performed inefficiently or unnecessarily has been reduced or eliminated. **Exhibit 2**. In the instant Motion, Plaintiffs' counsel has exercised billing judgment to charge only for paralegal time consisting of tasks related to court filings, despite the fact that paralegals spent numerous hours on the myriad tasks paralegals always perform. All of these reductions may be considered an overly generous exercise of billing judgment, as thousands of dollars have been cut from this Petition as a result.

### b. The Number of Hours Spent on Each Task was Reasonable

"[W]hen examining an attorney's fee claim, the district court should examine the hours spent on each task to determine the reasonableness of the hours reported. The district court, however, does not have to justify every hour allowed in awarding attorney's fees under federal statutes." *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000) (internal citation omitted). Similarly, there is no "requirement that district courts announce what hours are permitted for each legal task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1997, 1202 (10th Cir. 1986).

Given the important nature of Plaintiffs' claims, with rapidly evolving case law, Plaintiffs' counsel was reasonable in spending a significant amount of time researching and drafting motions and responses to motions. *See Casey v. Williams Prod. RMT Co.*, 599 F. Supp.

2d 1253, 1256 (D. Colo. 2009) ("The Court recognizes that a diligent attorney, even one with over 30 years of practice experience, should thoroughly investigate the opposition's papers and the relevant legal precedent and strive to produce competent and compelling work product; this investigation and drafting take time.").

In addition, the complex and important nature of the legal claims in this case warranted extensive legal research. *See Homans v. City of Albuquerque*, 264 F. Supp. 2d 972, 979 (D. N.M. 2003) ("[I]t is not unreasonable for attorneys to bill some amount of time to legal research on specific issues unique to a particular motion. Indeed, such a task is integral to the briefing process."). Plaintiffs' claims touch at the very heart of Constitutional matters that have been analyzed and debated for decades, accordingly, extensive legal research was necessary and expected of Plaintiffs' counsel.

### c. The Importance of this Case Necessitated Expenditure of Voluminous Hours

Given the vital public interest served by Plaintiffs' victory in this litigation, Plaintiffs' counsel's hours are reasonable. "Particularly in civil rights cases such as this, 'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'" *Joseph A. by Wolfe v. New Mexico Dep't of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (quoting *Hensley*, 461 U.S. at 435). After all, "[u]nlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Indeed, "[p]otential liability for full fee awards can deter violations of the civil rights laws, especially in situations where the fee award represents a significant portion of a defendant's financial exposure." *Lamm*, 713 F.2d at 552. The invalidation of Colorado's

ban on same-sex marriage has undoubtedly already affected thousands of Colorado citizens,

many of whom are able to marry the person they love for the first time in our state's history.  The

importance of this case cannot be overlooked.

### d.   Defendant's Litigation Required Plaintiffs' Counsel to Expend a Significant Number of Hours on this Case

"The Supreme Court has . . . recognized that part of an attorney's calculus of the amount

of time reasonably necessary for a case is the vigor which the opponents bring to the dispute."

*Robinson*, 160 F.3d at 1284.  Where, as here, defendants engage in hard-fought, knock-down-

drag-out litigation, plaintiffs' attorneys are reasonable in expending significant hours litigating:

> [H]ere the effort expended by the defendants suggests at least that they viewed the case as sufficiently complex and serious to warrant the expenditure of large amounts of attorney time, and it highlights the tooth-and-nail litigating approach the city used in this case.  In light of this tenacious effort by the city and its lawyers, the amount of attorney time expended by the plaintiffs begins to look more reasonable, not less.

*Id*. "The government cannot litigate tenaciously and then be heard to complain about the time

necessarily spent by the plaintiff in response."  *Copeland*, 641 F.2d at 904.  A "client cannot

escape the consequences of tactics that undeniably drive up the costs of litigation, even if such

tactics amount to no more than aggressive advocacy."  *Latham v. First Marine Ins. Co.*, 16 F.

App'x 834, 839 (10th Cir. 2001).

Standing on its own, Defendants' refusal to concede to the blatant unconstitutionality of

Colorado's same sex marriage bans is enough to warrant a significant fee award.  *See, e.g.*,

*Lamm*, 713 F.2d at 556 ("[H]ad the state defendants not decided to stonewall on all issues, . . .

this case would have a different posture."); *Ctr. For Biological Diversity v. U.S. Fish & Wildlife

Serv.*, 703 F. Supp. 2d 1243, 1248 (D. Colo. 2010).

After Defendants fought Plaintiffs' requested relief in the District Court and lost, it appealed this Court's decision and Plaintiffs' counsel was forced to continue litigating its claims in the Tenth Circuit, necessitating additional hours expended by Plaintiffs' counsel to secure their clients', and all Coloradans', fundamental right to marry.  Based upon Defendants' digging in their heels and refusing to stop enforcing Colorado's same-sex marriage bans, which Defendants knew to be unconstitutional from the early stages of the litigation, Plaintiffs' counsel's hours spent in response are reasonable.

### e.  Plaintiffs' Counsel Diligently Minimized Attorney Time Spent

"Another factor the court should examine in determining the reasonableness of hours expended is the potential for duplication of services.  'For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time.'"  *Lamm*, 713 F.2d at 554 (quoting *Copeland*, 641 F.2d at 891).  In this case, Plaintiffs' counsel exercised significant billing judgment in reducing, or writing off entirely, the time of associate attorneys for participating in hearings and meetings.  Counsel also reduced time spent by Partners on duplicative tasks, as appropriate.  Plaintiffs' counsel thus took advantage of all available opportunities to reduce the number of attorney hours spent on this litigation, and the hours submitted are therefore reasonable.

### 3.  Plaintiffs' Counsel's Rates are Reasonable

Plaintiffs' counsels requested hourly rates, which are in line with both the hourly rates they charge and are paid by clients and the local market, are reasonable.  "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would

charge for their time." *Lamm*, 713 F.2d at 555; *accord Bangerter*, 61 F.3d at 1510 ("Hourly rates must reflect the 'prevailing market rates in the relevant community.'" (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  Furthermore, "[t]he 'local market rate' is usually the state or city in which counsel practices."  *Ctr. For Biological Diversity*, 703 F. Supp. 2d at 1249 (quoting *Ellis v. Univ. of Kansas Medical Center*, 163 F. 3d 1186, 1203 (10th Cir. 1998)).  In addition, "[t]he hourly rate should be based on the lawyers' [sic] skill and experience in civil rights or analogous litigation."  *Lamm*, 713 F.2d at 555.

"The hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed."  *Id.*  As of the filing of this Motion, David Lane's hourly rate is $500,[2] Darold Killmer's hourly rate is $500,[3] Mari Newman's hourly rate is $450,[4] Darren Jankord's hourly rate is $300,[5] Danielle Jefferis' hourly rate is $275,[6] paralegal work is billed at $150 per hour, and legal assistant work is billed at $100 per hour.  The updated hourly rates are the standard rates charged and paid for work performed by these individuals when any client retains KILLMER, LANE & NEWMAN on an hourly basis.  **Exhibit 1**.  The Tenth Circuit has affirmed a fee award where "the hourly rates requested and awarded to some of plaintiffs' attorneys

---

[2] Mr. Lane has practiced criminal/civil rights litigation for 34 years, and is a partner at KILLMER, LANE & NEWMAN.

[3] Mr. Killmer has practiced civil rights litigation for 28 years, and is a partner at KILLMER, LANE & NEWMAN.

[4] Ms. Newman has practiced civil rights litigation for 17 years, and is a partner at KILLMER, LANE & NEWMAN.

[5] Mr. Jankord has practiced civil rights litigation for over two years, and is an associate at KILLMER, LANE & NEWMAN.

[6] Ms. Jefferis is an associate at KILLMER, LANE & NEWMAN and has been licensed to practice law for two years and has practiced civil rights litigation for over one year.

represent[ed] the actual current billing rates for the . . . attorneys who represented them." *Reazin v. Blue Cross & Blue Shield, Inc.*, 899 F.2d 951, 983 (10th Cir. 1990).

The hourly rates charged by each of the lawyers in this case are reasonable, based on each lawyer's experience and accomplishments. The legal experience and accomplishments of each of Plaintiffs' lawyers in this case is set forth in detail in the attached Affidavit of Mari Newman (**Exhibit 1**), and the Curriculum Vitae of each lawyer. *See C.V. of Mari Newman,* – **Exhibit 3**; *C.V. of David Lane,* **Exhibit 4**; *C.V. of Darold Killmer,* **Exhibit 5**; *C.V. of Darren Jankord,* **Exhibit 6**; *C.V. of Danielle Jefferis,* **Exhibit 7**.  This amount is included in the Summary of Plaintiffs' Counsel's Hours and Rates above.

According to experienced lawyers in the Denver community, the attorney and staff rates at KILLMER, LANE & NEWMAN are reasonable.  According to Sean Connelly, a partner at Reilly Pozner, a prominent Denver law firm, "the billing rates of attorneys and legal staff at the Killmer, Lane & Newman (KLN) firm are reasonable and customary in the Denver market for similarly qualified professionals." *See* **Exhibit 8**, Connelley Affidavit ¶ 3.  In his affidavit, Mr. Connelly, who is an experienced Colorado attorney and regularly reviews billing rates and practices, notes:

> The lawyers at the KLN firm have skills and experience unrivalled in the Denver legal market. I know of the KLN lawyers and firm from prior cases, from reputation, and from reviewing their lawyers' resumes in preparing this affidavit. The KLN lawyers and firms have a proven track record of successfully litigating difficult civil rights cases that many other Denver lawyers would be unwilling or unable to handle.

*Id* at ¶ 12. Concurring with Mr. Connelly, Lino S. Lipinski de Orlov, a partner in the Denver, Colorado office of McKenna Long & Alridge, an international law firm, also found that KLN's hourly rates "are reasonable for the Denver metropolitan legal market." *See* **Exhibit 9**, Lipinski

Affidavit, p. 9.  Mr. Lipinski, who also regularly reviews billing rates in the Denver legal community, also noted that "KLN has few, if any, competitors among the top tier of civil rights firms in the entire Rocky Mountain Region." *Id.* at p. 6.  Based on KLN's reputation and prevailing rates in the Denver legal community, the requested hourly rates are reasonable.

The rates for Killmer, Lane & Newman, LLP attorneys have also previously been approved in the federal district court of Colorado.  Most recently, Judge Blackburn approved the current hourly rates of KLN attorneys in *Duran v. Koehler*, No. 10-cv-01569-REB-KMT (D. Colo. 2014):

> As for the second piece of the lodestar calculation – a reasonably hourly fee – plaintiff has proffered sufficient evidence to support the conclusion that the rates charged by each of the various attorneys who participated in this litigation are reasonable and within the realm of rates charged by other lawyers of similar skill and experience in the Denver metropolitan market.

**Exhibit 10**. (Awarding hourly rates for David A. Lane and Darold W. Killmer at $500, Mari Newman at $450, and KLN associate attorneys with two-three years' experience at $300).[7] Because these rates are consistent with each attorney's extensive experience and are commensurate with the average rates for civil rights litigation in Denver with attorneys of this level of effectiveness and experience, they are reasonable.

### 4. The Lodestar Should Be Multiplied

While the lodestar amount "is presumed to result in a reasonable fee," it "can then be adjusted in light of the specifics of the case." *Sierra Club v. Cripple Creek & Victor Gold*

---

[7] In July 2010, in the case of *Schlenker v. City of Arvada*, No. 09-cv-01189-WDM-KLM (D. Colo. 2010), Judge Mix approved Killmer, Land & Newman's prior hourly rates of $450 for Mr. Killmer and $400 for Ms. Newman.  In the *Schlenker* case, paralegal rates of $110 per hour were paid.

*Mining Co.*, 509 F. Supp. 2d 943, 952 (D. Colo. 2006).  In determining whether to adjust the lodestar amount, a court considers:

> (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for the services; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation, and ability; (10) whether the case was desirable; (11) the nature and length of the attorney's relationship with the client; and (12) awards in similar cases.

*Sierra Club*, 509 F. Supp. 2d at 952 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  The Supreme Court has "reject[ed] any contention that a fee determined by the lodestar method may not be enhanced in any situation," but has indicated that enhancements should be reserved for "rare" cases.  *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1673-74 (2010).  This is one of those "rare" cases.

From the outset of this litigation, Plaintiffs and their counsel took on the daunting task of seeking a judicial determination that a statute passed by the Colorado Legislature was unconstitutional on its face.  Defendants have been represented from the start by the Colorado Attorney General's Office, and lawyers for Governor Hickenlooper's offices as well as by lawyers from the City and County of Denver and Jefferson County.  Additionally, because of the claims involved and the relief requested, there was *never* an opportunity for Plaintiffs' counsel to collect compensation based upon a contingency fee agreement.  Plaintiffs' counsel knew at the outset of this case that the only opportunity for compensation for their work would occur if Plaintiffs were successful at trial.

If a civil rights plaintiff is unable to find counsel willing to take his or her potentially unpopular and risky case, "his day in court is denied him; the congressional policy which he

seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." *Rivera*, 477 U.S. at 575 (internal quotation marks omitted). The extreme risk undertaken by Plaintiffs' counsel in this case thus justifies enhancing the lodestar. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731 (1987) ("Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market."); *see also Chem. Bank v. City of Seattle*, 19 F.3d 1291, 1302 (9th Cir. 1994) (holding that district court abused its discretion in failing to enhance a fee award where "the case was fraught with risk and recovery was far from certain" (internal quotation marks omitted)).

This case is therefore within the class of cases in which the lodestar should be enhanced.

### III. Plaintiffs are Entitled to an Award of the Reasonable Costs Incurred in this Litigation

Pursuant to Federal Rule of Civil Procedure 54(d), as prevailing parties, Plaintiffs are entitled to an award of the costs incurred as part of the litigation. *True Temper Corp. v. CF&I Steel Corp.*, 601 F.2d 495, 509 (10th Cir. 1979). Indeed, in issuing a permanent injunction, this Court ruled "that Plaintiffs are awarded costs." [Doc. 63 p. 4].

As detailed in the Bill of Costs, attached hereto as **Exhibit 11**, Plaintiffs incurred total costs of $566.68 in this litigation. Thus, Plaintiffs respectfully request that the Court order Defendants to pay those costs in full.

**IV.     Certification of Counsel and Certification Pursuant to** D.C.COLO.LCIVR **7.1**

Undersigned counsel hereby certifies that the billing rates reflected in this motion and the attached billing affidavits are the normal rates billed by counsel and paid by clients where an hourly fee is charged to the client.  Undersigned counsel further certifies that the costs and expenses reflected in this motion are the costs and expenses normally charged to clients of the below signed law firm, and that this practice is normal within the Denver legal community.  The referenced costs and expenses are the obligation of Plaintiffs in this case.

Undersigned counsel conferred with counsel for the Defendants regarding the filing of this Motion, who states that Defendants oppose the motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an Order granting them attorney fees in the amount of $134,028.75 and costs in the amount of $566.68 as they are the prevailing parties in this matter pursuant to 42 U.S.C. § 1988.[8]

Respectfully submitted this 10th day of November, 2014.

KILLMER, LANE & NEWMAN, LLP

_s/ Mari Newman_____
David A. Lane
Mari Newman
Darren M. Jankord
Danielle C. Jefferis
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
(303) 571-1001 (FAX)

ATTORNEYS FOR PLAINTIFFS

---

[8] Plaintiffs reserve the right to file a supplemental motion for fees and costs incurred in connection with the preparation of this Motion, and work performed and expenses incurred hereafter.